UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

—————————————————————

JEANIE LYNN BAILEY KOHL, as the executor of the
estate of JAMES ELWOOD KOHL, JR., deceased,

                              Plaintiff,                    No. 8:17-cv-692 (BKS/CFH)

v.

DERRICK D. YOUNG,

                              Defendant.

—————————————————————

**APPEARANCES:**

*For Plaintiff:*
E. David Hoskins
The Law Offices of E. David Hoskins, LLC
16 E. Lombard Street, Suite 400
Baltimore, MD 21202

**Hon. Brenda K. Sannes, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

I.    **INTRODUCTION**

On June 27, 2017, Plaintiff Jeanie Lynn Bailey Kohl, executor of the estate of Decedent

James Elwood Kohl, Jr., brought this diversity action against Defendant Derrick D. Young.

(Dkt. No. 1).[1]  The Complaint states causes of action for wrongful death and "pain and

suffering."  (*Id.* ¶¶ 36–54).  Defendant has not answered the Complaint or otherwise appeared in

this action.  Plaintiff sought and obtained a clerk's entry of default, which was entered on July

25, 2017.  (Dkt. No. 6).  In the pending motion, Plaintiff moves for a default judgment as to

—————————————————————

[1] The Complaint alleges that the Decedent was a citizen of New York at the time of his death, and Defendant is a
citizen of Ohio.  (Dkt. No. 1, ¶¶ 5–7).  For the purposes of determining diversity, "the representative of a decedent's
estate is treated as having the citizenship of the decedent."  *Badilla v. Nat'l Air Cargo, Inc.*, No. 12-cv-1066, 2013
WL 5723324, at *3, 2013 U.S. Dist. LEXIS 151747, at *8–9 (W.D.N.Y. Oct. 21, 2013) (quoting *Geler v. National
Westminster Bank USA*, 763 F. Supp. 722, 726 (S.D.N.Y. 1991)), *adopted by*, 2013 WL 5723324, 2013 U.S. Dist.
LEXIS 150999 (W.D.N.Y. Oct. 21, 2013).

liability against Defendant under Rule 55(b)(2) of the Federal Rules of Civil Procedure, and requests a hearing to determine the amount of damages.  (Dkt. No. 8-1).  For the reasons discussed below, that motion is granted.

## II.    STANDARD OF REVIEW

By failing to answer the Complaint or oppose this motion, Defendant is deemed to have admitted the factual allegations in the Complaint.  *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) ("[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability."); *Rolex Watch, U.S.A., Inc. v. Pharel*, No. 09-cv-4810, 2011 WL 1131401, at *2, 2011 U.S. Dist. LEXIS 32249, at *5–6 (E.D.N.Y. Mar. 11, 2011) ("In considering a motion for default judgment, the court will treat the well-pleaded factual allegations of the complaint as true, and the court will then analyze those facts for their sufficiency to state a claim.").  But before entering default judgment, the Court must review the Complaint to determine whether Plaintiff has stated a valid claim for relief.  *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009); *Telequip Corp. v. Change Exch.*, No. 01-cv-1748, 2004 WL 1739545, at *1, 2004 U.S. Dist. LEXIS 14892, at *3 (N.D.N.Y Aug. 3, 2004).

## III.    FACTS

In July of 2015, Decedent was a recruiter in the United States Army assigned to the Plattsburgh, New York recruiting office.  (Dkt. No. 1, ¶ 13).  On July 4, 2015, Decedent and Defendant "spent the majority of the day together at Defendant's apartment celebrating Independence Day."  (*Id.* ¶ 14).  Defendant "possessed a .40 caliber handgun which was fully loaded with live rounds of ammunition and left out in the open on a dining room cabinet shelf" in his apartment.  (*Id.* ¶ 15).  "During the day, [Decedent] handled the weapon and removed and loaded the magazine at least once before returning it to the shelf."  (*Id.* ¶ 16).

On the evening of July 4, 2015, Decedent and Defendant "went outside to watch fireworks and then visited a nearby bar to play pool." (*Id.* ¶ 17). Defendant "had been drinking throughout the day and was intoxicated when he returned to his apartment" with Decedent. (*Id.* ¶ 20). They returned to the apartment around 2:00 a.m. and "made burritos which they ate while seated on a couch in the living room." (*Id.* ¶ 19). Decedent then "picked up the .40 caliber handgun and started joking and acting gangster-like by waving his arms in the air." (*Id.* ¶ 21). Defendant "responded by standing and approaching [Decedent], demanding that the decedent return the handgun to [Defendant], stating 'Come on! Give me that!'" (*Id.* ¶ 22). Defendant then "raised his right hand suddenly and without warning and in a swiping motion, making contact with the handgun, grabbed the handgun and attempted to pull it from [Decedent's] hands." (*Id.* ¶ 23). "This caused [Decedent] to pull back and also caused the handgun to discharge a single live round." (*Id.*) "The bullet fired from the handgun entered the decedent's right cheek and exited at the base of the head . . . . The bullet did not enter or pass through the decedent's brain, but instead severed the internal carotid artery, causing the defendant to bleed to death in agony." (*Id.* ¶ 25). Decedent was pronounced dead at 9:12 a.m. on July 5, 2015. (*Id.* ¶ 42).

Plaintiff alleges that Decedent died with a will and is survived by his wife and three minor children. (*Id.* ¶ 43–44). On June 26, 2017, Plaintiff was appointed personal representative of Decedent's estate by Preliminary Letters Testamentary issued by the Surrogate's Court of the State of New York. (*Id.* ¶ 11). Plaintiff alleges that Defendant owed a duty to Decedent to, *inter alia*, "lock and secure and unload weapons in his premises; to protect [Decedent] . . . from foreseeable harm from a loaded handgun; . . . to correct a dangerous condition that was known; . . . to refrain from attempting to grab a loaded handgun from the decedent; and to protect human

life." (*Id.* ¶ 29). Plaintiff further alleges that Defendant was "negligent, careless, and reckless" in his failure to perform those duties owed to Decedent. (*Id.* ¶ 30). Plaintiff claims that Defendant's "negligence and/or recklessness was a proximate cause of the death," and that Decedent's "distributees have been deprived of the pecuniary value of the comfort, companionship, services, nurturing, love, guidance, influence, advice and affection of" Decedent as a result. (*Id.* ¶¶ 34–35).

## IV.    DISCUSSION

### A.    Procedural Requirements

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment." *Priestly v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). First, under Rule 55(a), the plaintiff must obtain a clerk's entry of default. Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."); *see also* Local Rule 55.1 (requiring a party seeking a clerk's entry of default to "submit an affidavit showing that (1) the party against whom it seeks a judgment . . . is not an infant, in the military, or an incompetent person (2) a party against whom it seeks a judgment for affirmative relief has failed to plead or otherwise defend the action . . . and (3) it has properly served the pleading to which the opposing party has not responded."). Second, under Rule 55(b)(2), the plaintiff must "apply to the court for entry of a default judgment." *Priestly*, 647 F.3d at 505; *see also* Local Rule 55.2(b) ("A party shall accompany a motion to the Court for the entry of a default judgment, pursuant to Fed. R. Civ. P. 55(b)(2), with a clerk's certificate of entry of default . . . a proposed form of default judgment, and a copy of the pleading to which no response has been made.").

Here, Plaintiff has complied with the procedural requirements for obtaining a default judgment.  She has requested and received an entry of default from the Clerk of Court for the United States District Court for the Northern District of New York.  (Dkt. Nos. 5, 6).  In support of her request, she submitted an affidavit affirming that Defendant is not an infant, incompetent, or an active duty member of the United States Armed Forces.  (Dkt. No. 5-1, ¶¶ 7–9).  She also submitted proof of service of the summons and complaint.  (Dkt. No. 4).  For the pending motion, Plaintiff complied with the requirements of Local Rule 55.2(b).  (Dkt. No. 8-1, ¶¶ 5–13; Dkt. No. 8-6).  As the procedural requirements for entry of default judgment are met, the Court will now address liability.

### B.    Liability

#### 1.    Wrongful Death

Based on the allegations in the Complaint, Defendant is liable for the wrongful death of Decedent.[2]  "The elements of a cause of action for wrongful death in New York are: '(1) the death of a human being, (2) the wrongful act, neglect or default of the defendant by which the decedent's death was caused, (3) the survival of distributees who suffered pecuniary loss by reason of the death of decedent, and (4) the appointment of a personal representative of the decedent.'"  *Quinn v. United States*, 946 F. Supp. 2d 267, 277 (N.D.N.Y. 2013) (quoting *Chong v. N.Y.C. Transit Auth.*, 25, 83 A.D.2d 546, 547 (4th Dep't 1981)).

Regarding the first, third, and fourth elements of a wrongful death claim, Plaintiff has adequately alleged each.  Plaintiff alleges that Decedent, whose estate for which she is executor, died on July 5, 2015.  (Dkt. No. 1, ¶ 42).  Plaintiff also alleges that she and her daughters, as

---

[2] As the parties in this diversity action are domiciliaries of different states and the alleged tort occurred in New York, Decedent's domicile, New York law applies.  *See Neumeier v. Kuehner*, 31 N.Y.2d 121, 128 (1972) (holding that if the parties are domiciliaries of different states, the court must determine whether the alleged tort occurred in the domicile of one of the parties, and if so, usually apply the law of that state).

distributees, have incurred pecuniary losses by reason of the loss of care, comfort, consortium,[3] assistance, household help, guidance, and maintenance of their" husband and father.  (*Id.* ¶ 45–47).  *See Huthmacher v. Dunlop Tire Corp.*, 309 A.D.2d 1175, 1176 (4th Dep't 2003) ("There are four elements of compensable loss encompassed by the general term 'pecuniary loss': (1) decedent's loss of earnings; (2) loss of services each survivor may have received from decedent; (3) loss of parental guidance from decedent; and (4) the possibility of inheritance from decedent.").  Finally, Plaintiff alleges that she was appointed personal representative of Decedent's estate by Preliminary Letters Testamentary issued by the Surrogate's Court of the State of New York on June 26, 2017.  (*Id.* ¶ 11).

As to the second element, Plaintiff bases her wrongful death claim on the allegation that Decedent's "death was caused to occur by the negligence of the Defendant."  (Dkt. No. 1, ¶ 38). Because a wrongful death claim is predicated on an underlying wrongful act, a determination of Defendant's negligence is "also determinative of plaintiff's wrongful death claim."  *Bradway v. Town of Southampton*, 826 F. Supp. 2d 458, 476 (E.D.N.Y. 2011).  Here, under New York law, a plaintiff must demonstrate three elements to adequately state a claim for negligence: "(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof."  *Gabriel v. County of Herkimer*, 889 F. Supp. 2d 374, 406 (N.D.N.Y. 2012) (quoting *Alfaro v. Wal-Mart Stores, Inc.*, 210 F.3d 111, 114 (2d Cir.2000)).

As a general rule,

> [w]henever one person is by circumstances placed in such a
> position with regard to another that every one of ordinary sense
> who did think would at once recognize that if he did not use

---

[3] Under New York law, however, loss of consortium is a derivative claim that rises and falls with a decedent's survival claims and cannot be predicated on a wrongful death claim.  *See Liff v. Schildkrout*, 49 N.Y.2d 622, 633–34 (1980) (declining "to recognize a common-law cause of action on behalf of the surviving spouse for permanent loss of consortium due to the wrongful death of his or her marital partner," and further holding that loss of consortium cannot be "claimed as an element of damages within a wrongful death action").

> ordinary care and skill in his own conduct with regard to the
> circumstances he would cause danger of injury to the person or
> property of the other, a duty arises to use ordinary care and skill to
> avoid such danger.

*Stagl v. Delta Airlines, Inc.*, 52 F.3d 463, 469 (2d Cir. 1995) (quoting *Havas v. Victory Paper Stock Co.*, 49 N.Y.2d 381, 386 (1980); *see also* Restatement (Third) of Torts: Phys. & Emot. Harm § 7(a) (Am. Law Inst. 2010) (a) (stating that one "ordinarily has a duty to exercise reasonable care when [one's] conduct creates a risk of physical harm"). Further, "[o]ne who voluntarily undertakes a duty is responsible for negligence in the performance of such an assumed duty even though the duty did not exist before it was voluntarily assumed." *Zibbon v. Town of Cheektowaga*, 51 A.D.2d 448, 450 (4th Dep't 1976). In the context of property ownership, a "property owner has a duty to maintain [its] property in a reasonably safe condition," but "a property owner has no duty to protect . . . against an open and obvious condition, which as a matter of law is not inherently dangerous." *Surujnaraine v. Valley Stream Cent. High Sch. Dist.*, 88 A.D.3d 866, 866–67 (2d Dep't 2011) (quoting *Katz v. Westchester Cty. Heathcare Corp.*, 82 A.D.3d 712, 713 (2d Dep't 2011)).

Plaintiff alleges that Defendant owed Decedent a duty of care to, *inter alia*, "lock and secure and unload weapons in his premises; to protect the decedent . . . from foreseeable harm from a loaded handgun; to take reasonable steps to protect the decedent . . . foreseeable harm from a loaded handgun; to correct a dangerous condition that was known; to keep its premises free from known dangerous conditions; . . . [and] to refrain from attempting to grab a loaded handgun from the decedent." (Dkt. No. 1, ¶ 29). Plaintiff further alleges that Defendant breached his duty of care when he failed to securely store the handgun within his own home, failed to protect Decedent from foreseeable harm from a loaded handgun, failed to keep his premises free from known dangerous conditions, and failed to "refrain from attempting to grab a

loaded handgun from" Decedent. (*Id.* ¶ 30). Finally, Plaintiff alleges that these breaches of duty resulted in Decedent's death. (*Id.* ¶ 34).

Under New York law, it is somewhat unsettled whether the mere presence of a loaded gun on a defendants' property is "inherently dangerous" and thus giving rise to liability. *See, e.g.*, *Abrams v. Berelson*, 94 A.D. 3d 782, 784–85 (2d Dep't 2012) ("Although the presence of a *loaded* gun may constitute a dangerous condition . . . the mere presence of a gun in the defendant's house was not sufficient to establish, as a matter of law, the defendant's liability founded on the presence of a dangerous condition, absent proof that the defendant had actual or constructive knowledge that the gun was loaded."); *Hahn v. Canty*, No. 3034-2012, 2013 WL 3851282, at *3, 2013 U.S. Misc. LEXIS 3228, *4–5 (N.Y. Sup. Ct. 2013) (concluding that, although "mere presence of the gun in the house" did not automatically render homeowner negligent, a trier of fact could conclude that, where defendant "decided to load [the gun] without telling anyone," defendant "thereby created a dangerous condition" giving rise to liability). In any event, Plaintiff has alleged facts sufficient to indicate that Defendant had a duty to act carefully, and breached that duty, when he attempted to grab the gun from Decedent and forcefully disarm him knowing that the gun was loaded. *See Castiglione v. Village of Ellenville*, 291 A.D.2d 769, 770 (3d Dep't 2002) ("People who undertake acts which they have no legal obligation to do still have a duty to act carefully, and if they do not, they may be subject to liability for negligently performing the assumed acts.").

Accordingly, because Plaintiff has sufficiently pleaded that Defendant owed a duty of care to decedent, breached that duty, and that the breach resulted in Decedent's death, she has adequately pleaded claims for negligence and wrongful death.

### 2.      Conscious Pain and Suffering

"In order to justify an award of damages for conscious pain and suffering, a plaintiff has the threshold burden of proving consciousness for at least some period of time following an accident or injury." *Quinn v. United States*, 946 F. Supp. 2d 267, 278 (N.D.N.Y. 2013); *see also Ramos v. Shah*, 293 A.D.2d 459, 460 (2d Dep't 2002) ("To recover damages for pain and suffering, an injured plaintiff must have some level of awareness."). "Without legally sufficient proof of consciousness following an accident, a claim for conscious pain and suffering must be dismissed." *Cummins v. County of Onondaga*, 84 N.Y.2d 322, 325 (1994). Here, Plaintiff has alleged that the bullet fired from the handgun did not immediately cause Decedent's death, "but instead severed the internal carotid artery, causing the defendant to bleed to death in agony," (*id.* ¶ 25), and to experience "severe conscious pain and suffering, mental and emotional anguish, [and] fear of impending death," (*id.* ¶ 52), in the moments before his death. Plaintiff has pleaded facts sufficient to indicate that Decedent experienced cognitive awareness following the injury, and accordingly, has adequately pleaded a claim for conscious pain and suffering. *See Sanchez v. City of N.Y.*, 97 A.D.3d 501, 506 (1st Dep't 2012) ("With regard to conscious pain and suffering, such a claim requires proof that the injured party experienced *some level* of cognitive awareness following the injury." (internal quotation marks omitted)). Accordingly, Plaintiff is entitled to entry of judgment as to liability.

### C.      Damages

As Plaintiff notes, because the Complaint "does not include a claim for a sum certain or a sum that can be made certain by computation," an evidentiary hearing is required. (Dkt. No. 8-1, ¶¶ 13–15). "[I]t is well established that '[w]hile a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages.'" *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found.*

*Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012). "There must be an evidentiary basis for the damages sought by plaintiff, and a district court may determine if there is sufficient evidence either based upon evidence presented at a hearing or upon a review of affidavits and documentary evidence." *Id.* (citing Fed. R. Civ. P. 55(b)(2)). Thus, Plaintiff's request for an evidentiary hearing is granted.

## V.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiff's motion for default judgment and request for an evidentiary hearing to determine damages (Dkt. No. 8) is **GRANTED**; and it is further

**ORDERED** that a hearing to determine damages in accordance with this order will be scheduled.

**IT IS SO ORDERED.**

Dated: March 29, 2018
       Syracuse, New York

Brenda K. Sannes
U.S. District Judge