UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JEANIE LYNN BAILEY KOHL, as the executor of the
ESTATE OF JAMES ELWOOD KOHL, JR., deceased,

                              Plaintiff,                No. 8:17-cv-692 (BKS/CFH)

v.

DERRICK D. YOUNG,

                              Defendant.
_____

**APPEARANCES:**

*Attorney for Plaintiff:*
E. David Hoskins
Law Offices of E. David Hoskins, LLC
16 East Lombard Street, Suite 400
Baltimore, MD 21202

**Hon. Brenda K. Sannes, United States District Court Judge:**

## MEMORANDUM-DECISION AND ORDER

### I.     INTRODUCTION

On June 27, 2017, Plaintiff Jeanie Lynn Bailey Kohl, executor of the estate of the decedent, James Elwood Kohl, Jr. ("Decedent"), brought this diversity action against Defendant Derrick D. Young asserting a wrongful death claim and a survival claim for pain and suffering. (Dkt. No. 1).[1] Defendant has not answered the Complaint or otherwise appeared in this action. Plaintiff obtained a clerk's entry of default on July 25, 2017. (Dkt. No. 6). Plaintiff then moved

---

[1] The Complaint alleges that the Decedent was a citizen of New York at the time of his death, and Defendant is a citizen of Ohio. (Dkt. No. 1, ¶¶ 5–7). For the purposes of determining diversity, "the representative of a decedent's estate is treated as having the citizenship of the decedent." *Badilla v. Nat'l Air Cargo, Inc.*, No. 12-cv-1066, 2013 WL 5723324, at *3, 2013 U.S. Dist. LEXIS 151747, at *8–9 (W.D.N.Y. Oct. 21, 2013) (quoting *Geler v. Nat'l Westminster Bank USA*, 763 F. Supp. 722, 726 (S.D.N.Y.1991)), *report-recommendation adopted by* 2013 WL 5723324, 2013 U.S. Dist. LEXIS 150999 (W.D.N.Y. Oct. 21, 2013); *see also* 28 U.S.C. § 1332(c)(2).

for default judgment as to Defendant's liability, (Dkt. No. 8), which the Court granted on March 29, 2018, (Dkt. No. 10). On June 8, 2018, the Court held an evidentiary hearing to assess Plaintiff's damages for wrongful death and pain and suffering. (*See* Text Minute Entry, June 8, 2018).

## II.     BACKGROUND

The facts of this case, as alleged in the Complaint, are set forth in the Court's March 29, 2018 Decision. (Dkt. No. 10, at 2–4).

## III.    DISCUSSION

"[I]t is well established that '[w]hile a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages.'" *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (quoting *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). On a motion for default judgment, a court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (citing *Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)). "There must be an evidentiary basis for the damages sought by plaintiff, and a district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence." *Cement & Concrete Workers Dist. Council Welfare Fund*, 699 F.3d at 234 (citing Fed. R. Civ. P. 55(b)(2)). "Magistrate judges and district courts have interpreted this to mean that . . . damages must be based on admissible evidence." *House v. Kent Worldwide Mach. Works, Inc.*, 359 F. App'x 206, 207 (2d Cir. 2010). Therefore, "a court may not rubber-stamp the non-defaulting party's

2

damages calculation, but rather must ensure that there is a basis for the damages that are sought." *Overcash v. United Abstract Grp., Inc.*, 549 F. Supp. 2d 193, 196 (N.D.N.Y. 2008) (citing *Credit Lyonnais*, 183 F.3d at 155).

At the June 8, 2018 evidentiary hearing, Plaintiff presented evidence indicating that Decedent's wrongful death caused $3,442,170 in pecuniary losses.[2] Plaintiff did not submit any evidence in support of her damages claim for Decedent's conscious pain and suffering.

### A. Wrongful Death

In a wrongful death action, damages are limited to fair and just compensation for pecuniary injuries suffered because of the decedent's death. *See Klos v. N.Y.C. Transit Auth.*, 240 A.D.2d 635, 637 (2d Dep't 1997). Under New York law, several factors inform a court's determination of the amount of recoverable damages: "the age, health and life expectancy of the decedent at the time of the injury; the decedent's future earning capacity and potential for career advancement; and the number, age and health of the decedent's distributees." *Johnson v. Manhattan & Bronx Surface Transit Operating Auth.*, 71 N.Y.2d 198, 203–204 (1988); N.Y. Est. Powers & Trusts Law § 5-4.3. Pecuniary losses include "the economic value of the decedent to each distributee at the time decedent died and include[] loss of income and financial support, loss of household services, loss of parental guidance, as well as funeral expenses and medical expenses incidental to death." *Milczarski v. Walaszek*, 108 A.D.3d 1190, 1190 (4th Dep't 2013); *see also Gonzalez v. N.Y.C. Hous. Auth.*, 77 N.Y.2d 663, 668 (1991).

Plaintiff seeks $3,442,170 in pecuniary damages for the wrongful death of her husband, James Elwood Kohl, Jr., who held the rank of staff sergeant in the U.S. Army at the time of his

---

[2] Plaintiff has submitted a full analysis of the economic loss resulting from the Decedent's death, (Ex. 23), along with shorter version of that same report, (Ex. 24). Plaintiff's economist, Kristin Kucsma, testified that the two reports provide different damages calculations, $3,487,400 in Ex. 23 and $3,442,170 in Ex. 24, due to different projections for Decedent's retirement income. Kucsma testified that the lower amount, or $3,442,170, is the most accurate figure—accordingly, the Court considers that analysis below.

death. (Dkt. No. 1, ¶¶ 36–54; Ex. 24, at 27). The report by Plaintiff's expert economist, Kristin Kucsma, indicates that this amount includes several categories of Decedent's projected income and economic loss caused by his death: (i) Decedent's adjusted past and future income,[3] both while in the Army and after leaving active duty; (ii) Decedent's retirement income; (iii) the cost of health insurance; (iv) household services performed by Decedent; and (v) parental services Decedent provided to his three children. (Ex. 23, at 10; Ex. 24, at 2).

### 1. Past and Future Income

The expert report indicates that, in determining the amount of income lost for past Army pay, Kucsma considered Decedent's W-2 wage and tax statements, Army pay statements, and many governmental sources of data. Kucsma also considered Decedent's gross yearly earnings as a staff sergeant at the E-6 pay grade from July 2015 to June 2018, including Decedent's years of service, base pay, allowance for food and housing, monthly clothing allowance, and special duty assignment pay. (Ex. 23, at 14; Ex. 24, at 2–4). The report indicates that Kucsma then deducted from that amount any actual income received by the family following Decedent's death and applied an "adjusted income factor,"[4] resulting in a final figure of $121,395 for Decedent's past income from the Army. (Ex. 23, at 14; Ex. 24, at 4). The report further indicates that, using the same methodology to calculate Decedent's income from the Army from June 2018 until his

---

[3] Kucsma's analysis was divided between "past" losses—i.e., losses from the time of Decedent's death to the present date—and "future" losses—i.e., losses incurred after the present date. In projecting Decedent's "adjusted" future income, Kucsma indicated that she accounted for Decedent's work-life expectancy, the likelihood of periods of unemployment, the value of fringe benefits, and "personal consumption expenditures," such as meals, clothing, and other services Decedent would have performed for himself. (Ex. 23, at 13). Kucsma also testified that the amounts in the report are "present value" figures, meaning they represent the "amount of a lump-sum payment needed at present to generate a flow of payments sufficient to compensate for the losses in each year of loss included" in her appraisal of damages. (Ex. 23, at 40).

[4] The report indicates that, after adjusting for anticipated unemployment, fringe benefits, and personal consumption expenditures, Kucsma determined that the actual losses associated with Decedent's income from the Army amount to 70.1% of his gross yearly income. (Ex. 23, at 13–14; Ex. 24, at 4).

4

estimated date of retirement from the Army on November 14, 2026, the present value of the Decedent's future Army income is $409,577. (Ex. 23, at 18; Ex. 24, at 7).

At the evidentiary hearing, Plaintiff testified that Decedent planned to pursue a career as a substance abuse mental health counselor after retiring from the Army. Using Bureau of Labor Statistics data, Kucsma calculated the income Decedent would have likely earned in this post-Army career, from the time of his retirement from the Army on November 26, 2026 until his statistically projected date of retirement on October 18, 2044.[5] (Ex. 23, at 18). Taking into consideration the average median earnings for mental health counselors and expected annual wage growth, the report indicates that the present value of the Decedent's post-Army future income loss is $560,470. (Ex. 24, at 8).

### 2. Retirement Income

Decedent planned to retire in 2026 after twenty years of service in the Army, at which point he would have been eligible to receive retirement benefits. (Ex. 23, at 20). Kucsma's report indicates that, upon Decedent's retirement from the Army, he would have received $2,516 per month from November 25, 2026 to February 8, 2058.[6] (Ex. 23, at 21). After accounting for cost-of-living adjustments, Kucsma projects that the present value of Decedent's Army retirement income is $365,753. (Ex. 23, at 21–23; Ex. 24, at 11–12).

### 3. Health Insurance

The expert report indicates that, in calculating losses stemming from Decedent's health insurance, Kucsma considered, inter alia, the dates upon which Plaintiff and Decedent's children will lose their current health insurance benefits from the Army, (Ex. 23, at 7), Decedent's

---

[5] The report indicates that, considering his age and education at the time of his death, Decedent's statistically projected age of retirement is 65.12 years. (Ex. 23, at 4–5).

[6] The report indicates that males of Decedent's age have an average lifespan of 78.43 years, making Decedent's statistically projected date of death February 8, 2058. (Ex. 23, at 4).

children's future eligibility for health insurance benefits, and the projected value of comparable individual and family plans extending through Decedent's projected date of retirement, (Ex. 23, at 24). Kucsma calculates that the present value of the replacement cost of health insurance that Decedent would have provided is $414,135. (Ex. 23, at 24–25; Ex. 24, at 13–14).

### 4.     Household Services

Kucsma's calculations of the value of Decedent's household services run from July 5, 2015 to February 8, 2058, Decedent's statistically projected date of death. (Ex. 23, at 26–27; Ex. 24, at 14–15). In her analysis, Kucsma considers, inter alia, the number of hours per week that a married, fully employed male typically contributes to normal household work. (Ex. 23, at 26). Kucsma notes that this figure varies depending on the age of the youngest child in the household and the spouse's employment, if any, and accounts for the probability that an individual might become disabled during the course of his remaining life expectancy. (Ex. 23, at 26). Kucsma sets the value of this labor by multiplying the hours worked by a reasonable hourly rate in the market place for those services, adjusted for inflation. (Ex. 23, at 26). Kucsma calculates that the present value of Decedent's household services is $33,882 for past years and $455,263 for future years. (Ex. 23, at 28–30; Ex. 24, at 16–18).

### 5.     Parental Guidance and Nurturing Services

Kucsma's report considers the value of Decedent's "parental nurturing and guidance services" that Decedent, "had he lived, would have continued to provide for his children." (Ex. 23, at 31). The report calculates the value of such services from the date of Decedent's death to the time of Decedent's statistically projected natural death in 2058. (Ex. 23, at 31–35; Ex. 24, at 20–22). Decedent had three children—two with Plaintiff, R.K. and V.K., and one from a previous marriage, P. (Ex. 23, at 9). At the evidentiary hearing, Plaintiff and Decedent's mother testified that V.K. was born after Decedent's death and that, due to distance and other

6

circumstances, Decedent did not have a relationship with P. at the time of his death. Accordingly, Kucsma's report contains separate analyses of Decedent's parental services with respect to each of the three children, taking into account the time that Decedent would have provided to each child for services similar to that of a therapist, teacher, and financial planner. (Ex. 23, at 9, 31–33). Kucsma then calculates the pecuniary value of this time by examining the hourly rates for comparable professional services in the market. (Ex. 23, at 32–33). Thus, with respect to R.K. and V.K., the report indicates that the present value of Decedent's parental services lost amounts to $135,567 for past years and $865,025 for future years. (Ex. 23, at 33–35; Ex. 24, at 20–22). With respect to P., Kucsma estimates the present value of parental services lost to be $5,784 for past years and $75,321 for future years. (Ex. 23, at 37–39; Ex. 24, at 24–26).

### 6. Summary of Pecuniary Damages

Upon careful consideration of the evidence and testimony presented at the June 8, 2018 hearing, the Court finds that Plaintiff has established a sufficient evidentiary basis for the following pecuniary damages:

| Loss Category | Past | Future | Total Value |
| --- | --- | --- | --- |
| Income from Army | $121,395 | $409,577 | $530,972 |
| Income from Employment After Army | -- | $560,470 | $560,470 |
| Retirement Income | -- | $365,753 | $365,753 |
| Health Insurance | -- | $414,135 | $414,135 |
| Household Services | $33,882 | $455,263 | $489,145 |
| Parental Services (R.K. and V.K.) | $135,567 | $865,025 | $1,000,592 |
| Parental Services (P.) | $5,784 | $75,321 | $81,105 |
| **Total Loss Value** | | | **$3,442,172[7]** |

---

[7] It is unclear why the total of the figures in Kucsma's expert report, when tabulated by the Court, differs by $2.00 from the total contained within the report. In any event, Plaintiff has requested $3,442,170—lower than the Court's calculation—and accordingly, this Order proceeds in contemplation of that amount.

7

Accordingly, Plaintiff is awarded $3,442,170 in pecuniary damages associated with the wrongful death of the Decedent, James Elwood Kohl, Jr.  (Dkt. No. 1, ¶¶ 36–54; Ex. 24, at 27).

### B.      Conscious Pain and Suffering

In addition to the pecuniary losses set out above, Plaintiff seeks damages for Decedent's conscious pain and suffering.  In a wrongful death case, damages for conscious pain and suffering are available only where a plaintiff offers proof of a decedent's cognitive awareness before death.  *See Keenan v. Molloy*, 137 A.D.3d 868, 871 (2d Dep't 2016); *see also Annexstein v. Inzerilli*, No. 10-cv-3655, 2012 WL 526647, at *2, 2012 U.S. Dist. LEXIS 19884, at *2–5 (E.D.N.Y. Feb. 16, 2012) (explaining that "no damages could be awarded without supporting documentation" of pain and suffering), *report-recommendation adopted as modified*, 2012 WL 827007, 2012 U.S. Dist. LEXIS 32154 (E.D.N.Y. Mar. 9, 2012).

At the evidentiary hearing, Plaintiff acknowledged that she was unable to produce evidence, medical or otherwise, demonstrating that Decedent was conscious for any amount of time after he was shot, but referred the Court to *Glaser v. County of Orange*, 54 A.D.3d 997, 998 (2d Dep't 2008).  (*See* Text Minute Entry, June 8, 2018).  *Glaser*, however, stands for the proposition that a court may award conscious pain and suffering damages where expert medical testimony indicates that the decedent suffered for as little as two minutes before death.  54 A.D.3d 997, 998 (2d Dep't 2008).  Here, in the absence of any evidence indicating that Decedent was conscious following the gunshot, Plaintiff's claim for damages for Decedent's conscious pain and suffering must be denied.  *See Kevra v. Vladagin*, 96 A.D.3d 805, 806 (2d Dep't 2012) ("Mere conjecture, surmise, or speculation is insufficient to sustain a cause of action to recover damages for conscious pain and suffering." (citing *Cummins v. County of Onondaga*, 84 N.Y.2d 322, 324 (1994))).

8

## IV.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiff is awarded default judgment against Defendant on the first cause of action for wrongful death for the sum of $3,442,170;

**ORDERED** that Plaintiff's request for an award of damages for conscious pain and suffering damages is **DENIED**; and it is further

**ORDERED** that Plaintiff serve a copy of this Memorandum-Decision and Order on Defendant and file a certificate of service by July 6, 2018; and it is further

**ORDERED** that the Clerk of the Court is directed to close this case.

**IT IS SO ORDERED.**

Dated:  June 22, 2018
            Syracuse, New York

*/s/ Brenda K. Sannes*
Brenda K. Sannes
U.S. District Judge